ALVIN B. GROVES, Plaintiff-Appellee, v. THE DEPARTMENT OF PROFESSIONAL REGULATION, Defendant-Appellant.

Fourth District   No. 4—91—0209

Opinion filed November 25, 1991.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of Chicago, of counsel), for appellant.

William F. Trapp and Terry D. Charlton, both of Brown, Hay & Stephens, of Springfield, for appellee.

JUSTICE GREEN delivered the opinion of the court:

In May 1990, plaintiff Alvin B. Groves applied to defendant Illinois Department of Professional Regulation (Department) for a license to practice in Illinois as a professional engineer. His application was based upon the provisions of section 19 of the Professional Engineering Practice Act of 1989 (1989 Act), which authorizes the Department to license an applicant by a process called "endorsement" (Ill. Rev. Stat. 1989, ch. 111, par. 5219). The procedure is based upon the applicant having been licensed in another State under certain circumstances. On July 26, 1990, the Department denied plaintiff's application, ruling that his Texas license was not issued under circumstances meeting the requirements of section 19. The Department found that because plaintiff took the principles and practice engineering examination prior to obtaining four years' professional work experience, he did not meet the statutory requirements, apparently a reference to section 9(2) of the Professional Engineering Act, enacted in 1945 (1945 Act) (Ill. Rev. Stat. 1985, ch. 111, par. 5112(2)). Pursuant to sec-

tion 37 of the 1989 Act (Ill. Rev. Stat. 1989, ch. 111, par. 5237), plaintiff proceeded under the Administrative Review Law (Ill. Rev. Stat. 1989, ch. 110, par. 3—101 *et seq.*) before the circuit court of Sangamon County. By order of February 14, 1991, that court reversed the Department and ordered that an Illinois license be issued to plaintiff. The Department has appealed. We affirm.

The evidence in this cause is undisputed. The decision turns upon statutory interpretation. Section 7 of the 1989 Act (Ill. Rev. Stat. 1989, ch. 111, par. 5207) provides that in passing upon license applications, the Department shall receive a written recommendation from the State Board of Professional Engineers of the Department of Professional Regulation (Board).

■ Section 19 of the 1989 Act lists the requirements for license in Illinois for an applicant licensed under the laws of another jurisdiction:

"The Department may, upon the recommendation of the Board, license as a professional engineer, without examination *** an applicant who is a professional engineer registered or licensed under the laws of another state *** if the applicant qualifies under Section 10 of this Act, *or if the qualifications of the applicant were at the time of registration or licensure in another jurisdiction substantially equal to the requirements in force in this State on that date.*" (Emphasis added.) Ill. Rev. Stat. 1989, ch. 111, par. 5219.

Accordingly, we look to the provisions of the 1945 Act (Ill. Rev. Stat. 1985, ch. 111, par. 5101 *et seq.* (repealed by Pub. Act 81—999, §4.5, eff. Oct. 1, 1989, as amended by Pub. Act 82—953, eff. Dec. 31, 1989)), which was in effect at the time plaintiff was licensed as an engineer by the State of Texas. The record shows the Texas license was obtained in October 1986. Under the terms of section 19 of the 1989 Act, the question before the Board and the Department was whether, in October 1986, plaintiff had *qualifications* "substantially equal to the *requirements* in force in this State on that date." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 111, par. 5219.) The statutory requirements in force in Illinois in October 1986 for issuance of a license as a professional engineer are contained in section 9 of the 1945 Act, which provided, in pertinent part, as follows:

"(2) A graduate of an approved engineering curriculum of at least 4 years who submits evidence of an *additional* 4 years or more of experience in engineering work *** *shall be admitted* to a nominal 8 hour written examination in the fundamentals of engineering, and a nominal 8 hour written examination in the

principles and practice of engineering. *Upon passing* both examinations, the applicant shall be granted a certificate of registration to practice professional engineering in this State, if he is otherwise qualified; or

(3) An applicant having satisfactorily completed a 4 year college curriculum resulting in a degree in basic engineering or related science and 8 years or more of progressive experience in engineering work \*\*\* and who passes a nominal 8 hour written examination in the fundamentals of engineering \*\*\* and a nominal 8 hour written examination in the principles and practice of engineering, shall be granted a certificate of registration to practice professional engineering in this State, if he is otherwise qualified." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 111, pars. 5112(2), (3).

■ The circuit court ruled plaintiff was entitled to a license by endorsement because he met the requirements of section 9(3) of the 1945 Act. On appeal, plaintiff maintains this was correct. We agree. The record before the Department showed (1) plaintiff received a bachelor of science degree in civil engineering from Texas A&M University on December 8, 1978; (2) prior to issuance of his Texas license on October 23, 1986, he had almost eight years' experience in engineering work (the Department does not contend this experience does not meet the "progressive" requirement of section 9(3) of the 1945 Act), including the 10-month period spent at the University of Edinburgh, Scotland (September 1980 to July 1981); and (3) he passed examinations of the type referred to in section 9(3) of the 1945 Act in 1978, prior to receiving his bachelor's degree from Texas A&M. Thus, the record indicates plaintiff's qualifications are substantially equal to the fully expressed requirements of section 9(3) of the 1945 Act.

The Department rejects plaintiff's theory that he meets the requirements of section 9(3) of the 1945 Act, arguing that certain unstated order-of-fulfillment requirements implicitly control section 9(3) to make it consistent with section 9(2) of the 1945 Act and to meet the public policy of preventing injury to the public by incompetent professionals. (*Lindsey v. Edgar* (1984), 129 Ill. App. 3d 718, 721, 473 N.E.2d 92, 94.) The Department points out that we should look to the entire statute to find the legislative intent (*Howard v. Forbes* (1989), 185 Ill. App. 3d 148, 541 N.E.2d 685) and construe it in such a way as to give all its provisions a harmonious effect. *Department of Revenue v. Smith* (1986), 150 Ill. App. 3d 1039, 1048, 501 N.E.2d 1370, 1378.

At the heart of the Department's contention of implied conditions in section 9(3) of the 1945 Act is the curious difference between the

work experience requirements of subsections (2) and (3) of section 9. Subsection (2) required only four years' experience but required those four years to be "additional" to the four years of college work and to be completed prior to taking the written examinations. (Ill. Rev. Stat. 1985, ch. 111, par. 5112(2).) In *Hansell v. Department of Registration & Education* (1983), 113 Ill. App. 3d 862, 448 N.E.2d 1, this court construed section 9(2) of the 1945 Act to require the four years of experience to have been obtained after completion of the prescribed four years of college work. Unlike subsection (2), subsection (3) required eight years of experience but made no requirement as to when that experience must be obtained nor as to when the written examinations must be taken. The issue in that case was whether the 43 months of professional experience the applicant had completed post degree, together with the five months' experience attained prior to graduation, comported with the requirements of section 9(2) of the 1945 Act. We held that it did not. The Department points out that subsection (2) required an applicant be a "graduate of an approved engineering curriculum," while subsection (3) only required completion of a four-year college curriculum in engineering or a related science. The Department maintains it is illogical to require applicants qualifying under subsection (2) (which the Department claims describes applicant's educational qualifications and has stricter scholastic requirements) to obtain their work experience after receipt of a bachelor's degree and to complete the written examinations only after that experience is acquired, while permitting applicants qualifying under subsection (3) (with its less stringent scholastic requirement) to obtain their work experience and pass written examinations at any time.

The Department also notes that section 9.2 of the 1945 Act provided that after "completion of 4 years of professional experience, an engineer-in-training *** is eligible to apply for the second part of the examination" and upon passage, to be licensed. (Ill. Rev. Stat. 1985, ch. 111, par. 5114.) Thus, an applicant who proceeded through the "engineer-in-training" route to obtain a license must, like those qualifying under section 9(2) of the 1945 Act, have some professional experience before taking "the second part of the examination."

While we attempt to construe a statute in such a way as to give effect to the public policy involved and to give consistency to all its parts, we must also consider the plain and ordinary language used. (*Lyon v. Hasbro Industries, Inc.* (1987), 156 Ill. App. 3d 649, 654, 509 N.E.2d 702, 705.) Section 9(2) of the 1945 Act made clear the order in which the statutory requirements were to be fulfilled: professional experience must be obtained after graduation and prior to taking and

passing the professional examinations. As plaintiff points out, section 9(3) is entirely silent on the order in which the statutory requirements may be fulfilled. A logical reason for the difference could be a recognition that progressive work experience of sufficient longevity is its own demonstration of proficiency, while an applicant with only a minimum of four years' work experience needs to demonstrate his proficiency through examination prior to licensing. By omitting the order-of-fulfillment strictures present in section 9(2), the legislature may well have intended in section 9(3) to allow a degree of flexibility in the attainment of the qualifications for professional engineer when a practical proficiency, evidenced by hands-on experience, was demonstrated.

■ Were we to conform the provisions of subsection (3) to those of subsection (2) by engrafting the order-of-fulfillment requirements, the difference between the two sections then would be that applicants who are graduates of "an approved engineering curriculum" would have to qualify under section 9(2), and those who are not would have to qualify under section 9(3) by obtaining eight years of experience after college but before taking the examination. Such a result would accrue pursuant to section 10 of the 1989 Act (Ill. Rev. Stat. 1989, ch. 111, par. 5210), but we conclude that we would be rewriting section 9 of the 1945 Act by judicial fiat if we placed such an interpretation on the language used there.

The circuit court properly followed the legislative language setting forth the licensing requirements in force in this State in October 1986, when plaintiff was licensed in Texas. We affirm the decision of the circuit court requiring a license to issue.

Affirmed.

LUND, P.J., and STEIGMANN, J., concur.